IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW E. YOCKLIN, | ) | CASE NO. 3:14 CV 191 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action by Andrew E. Yocklin under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Pursuant to my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed

---

[1] This matter was referred to me under Local Rule 72.2 in a marginal entry order dated January 29, 2014.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

[5] ECF # 6.

[6] ECF # 13.

[7] ECF # 16 (Yocklin's brief); ECF # 20 (Commissioner's brief); ECF # 21 (Yocklin's reply brief).

supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

### A.     Background facts and decision of the Administrative Law Judge ("ALJ")

Yocklin, who was 49 years old at the time of the ALJ's decision,[11] has a high school equivalency education, and previously worked a truck driver.[12]

The ALJ, whose decision became the final decision of the Commissioner, found that Yocklin had the following severe impairments: obesity, mild L4-L5 degeneration, history of multiple myocardial infarctions and stenting, status post automatic implantable cardioverter defibrillator placement, hypertension controlled on medications, and bilateral sensorineural hearing loss (20 CFR 404.1520(c) and 416.920(c)).[13]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Yocklin's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except: work that can be done in a

---

[8] ECF # 16-2 (Yocklin's charts); ECF # 20-1 (Commissioner's charts).

[9] ECF # 16-1 (Yocklin's fact sheet).

[10] ECF # 22.

[11] Transcript ("Tr.") at 28, 30.

[12] *Id.* at 28.

[13] *Id.* at 19.

seated or standing position; occasional climbing of stairs; no climbing of ladders and the like; rare (meaning less than occasionally but not completely precluded) stooping greater than 90 degrees; occasional crawling; occasional exposure to temperature extremes, humidity and respiratory irritants; no exposure to obvious hazards; no work where the pace of productivity is dictated by an external source over which the claimant has no control, such as an assembly line or conveyor belt; and in a setting that is louder than level 4 or 5 (meaning loud or very loud according to the Selected Characteristics of Occupations (SCO)), face to face contact is needed for communication.[14]

The ALJ decided that this RFC precluded Yocklin from performing his past relevant work as a truck driver.[15]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Yocklin could perform.[16] The ALJ, therefore, found Yocklin not under a disability.[17]

## B. Issues on judicial review

Yocklin asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Yocklin's challenge presents the following issue for judicial review:

Did the ALJ give good reasons for the weight assigned to the opinions of Yocklin's treating physician and cardiologist?

---

[14] *Id.* at 22.

[15] *Id.* at 28.

[16] *Id.* at 28-29.

[17] *Id.* at 29.

For the reasons that follow, I will recommend that the ALJ's finding of no disability is not supported by substantial evidence as to a specific finding and, therefore, will be reversed as to that issue.

## Analysis

**A.**     **Standards of review**

*1.*     *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[18]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner

---

[18] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[19]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.  The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

**2.      *Treating physician rule and good reasons requirement***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[21]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[22]

---

[19] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[21] 20 C.F.R. § 404.1527(d)(2).

[22] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[23] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[24]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[25] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[26] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[27] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[28]

In *Wilson v. Commissioner of Social Security*,[29] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[23] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[24] *Id.*

[25] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[26] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[27] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[28] *Id.* at 535.

[29] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[30] The court noted that the regulation expressly

contains a "good reasons" requirement.[31] The court stated that to meet this obligation to give

good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[32]

The court went on to hold that the failure to articulate good reasons for discounting

the treating source's opinion is not harmless error.[33] It drew a distinction between a

regulation that bestows procedural benefits upon a party and one promulgated for the orderly

transaction of the agency's business.[34] The former confers a substantial, procedural right on

the party invoking it that cannot be set aside for harmless error.[35] It concluded that the

requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[30] *Id.* at 544.

[31] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[32] *Id.* at 546.

[33] *Id.*

[34] *Id.*

[35] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[36]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[37] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[38] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[39] *Blakley v. Commissioner of Social Security*,[40] and *Hensley v. Astrue*.[41]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[42] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[43] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give

---

[36] *Id.*

[37] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[38] *Id.* at 375-76.

[39] *Rogers*, 486 F.3d at 242.

[40] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[41] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[42] *Gayheart*, 710 F.3d at 376.

[43] *Id.*

the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[44] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[45]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[46] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[47] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[48] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[49] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[50]

But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

---

[44] *Id.*

[45] *Rogers*, 486 F.3d at 242.

[46] *Gayheart*, 710 F.3d at 376.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[51]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[52] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[53] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[54] or that objective medical evidence does not support that opinion.[55]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[51] *Id.*

[52] *Rogers*, 486 F.3d 234 at 242.

[53] *Blakley*, 581 F.3d at 406-07.

[54] *Hensley*, 573 F.3d at 266-67.

[55] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[56] The Commissioner's *post hoc* arguments on judicial review are immaterial.[57]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[58]

- the rejection or discounting of the weight of a treating source without assigning weight,[59]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[60]

---

[56] *Blakley*, 581 F.3d at 407.

[57] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[58] *Blakley*, 581 F.3d at 407-08.

[59] *Id.* at 408.

[60] *Id.*

-11-

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[61]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[62] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[63]

The Sixth Circuit in *Blakley*[64] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[65] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[66]

In *Cole v. Astrue*,[67] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[61] *Id.* at 409.

[62] *Hensley*, 573 F.3d at 266-67.

[63] *Friend*, 375 F. App'x at 551-52.

[64] *Blakley*, 581 F.3d 399.

[65] *Id.* at 409-10.

[66] *Id.* at 410.

[67] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[68]

**B.     Application of standards**

The parties contend that this case presents two different questions: whether substantial evidence, as demonstrated by a holistic review of the record, supports the ALJ's position that the opinions of the treating sources are not to be given substantial weight,[69] or whether the ALJ's failure to strictly follow the procedure for evaluating opinions of treating sources is itself a lack of substantial evidence supporting the ALJ's decision.[70]

The ALJ did not directly identify the two physicians at issue as treating sources nor did she make any explicit findings regarding whether, as treating sources, either or both opinions should be accorded controlling weight. As such, and as noted by Yocklin, this approach does not strictly comply with the Commissioner's own treating physician rule as understood by the Sixth Circuit. However, as that rule has been understood by the Sixth Circuit and by courts in this district, so long as the ALJ gives good reasons on the record for the weight ultimately assigned to the opinion of a treating source, that will be deemed

---

[68] *Id.* at 940.

[69] ECF # 20 at 12-16.

[70] ECF # 21 at 1-2.

sufficient to comport with the procedural requirements.[71] Thus, the issue presented here is whether the ALJ presented good reasons to support the weight given to the relevant opinions.

Accordingly, as to the weight given to these opinions and the reasons for that decision, the ALJ gave the August, 2011, opinion of Amer Ashad, M.D., Yocklin's treating internist, only "some weight" because "medical evidence" does not support the "stringent limitations" he gave as to standing, walking, sitting, or bending.[72] She noted further that the RFC, as formulated, accommodates the functional restrictions noted by Dr. Arshad by limiting Yocklin to work that can be performed either sitting or standing, and by including other restrictions.[73] In that regard, she found that an RFC for a range of light work with postural limitations was "not inconsistent" Dr. Arshad's opinions.[74]

As to the March, 2013, opinion of Mehran Arabpour, D.O., a cardiologist, the ALJ gave his opinion "limited weight" because, apart from the portion of the opinion addressing lifting, which the ALJ found to be consistent with light work, the ALJ determined that the balance of Dr. Arabpour's opinion was not supported by the medical evidence and was inconsistent with Yocklin's own testimony.[75]

---

[71] *See*, *Rogers*, 486 F.3d at 242. Reasons must be sufficiently clear to a reviewing court as to the basis for the weight assigned and must appear in the text of the opinion itself and not be supplied later by counsel or the court.

[72] Tr. at 27.

[73] *Id.* at 26.

[74] *Id.* at 27.

[75] *Id.*

-14-

In reviewing the reasons cited, I observe first, as Yocklin notes, that the ALJ seems to have improperly discounted the opinion of Dr. Arabpour, a cardiologist, because that opinion was purportedly formulated on assessments of Yocklin's "musculo-skeletal symptoms such as back pain and fatigue [rather] than on his cardiac issues."[76] In fact, as Yocklin further notes, Dr. Arabpour never treated Yocklin for anything other than for coronary artery disease, chest pain, cardiomyopathy with pacemaker implant, and fatigue.[77] Thus, to the degree that the ALJ discounted Dr. Arabpour's opinion because it was based on complaints of back problems that were found to be "relatively mild" and not Yocklin's clearly documented heart issues, that reason is not a good reason.

Further, and in the same vein, I note that both opinions gave remarkably similar limitations as to Yocklin's ability to sustain walking, sitting, or standing. For instance, Dr. Arabpour, Yocklin's cardiologist, opined that Yocklin could stand for only an hour per day and sit for no more than two hours a day.[78] Dr. Arshad, Yocklin's internist, agreed with Dr. Arabpour that Yocklin could stand for only one hour per day and was only somewhat more expansive than Dr. Arabpour in opining that Yocklin could sit for three hours per day.[79] Moreover, as noted earlier, Dr. Arabpour's opinion in this regard was based solely on Yocklin's cardiac issues, not on back pain, and Dr. Arshad seems to differentiate the

---

[76] ECF # 21 at 5, quoting Tr. at 27.

[77] *Id.*, citing Tr. at 389.

[78] Tr. at 389.

[79] *Id.* at 386-87.

restrictions arising from back issues, which manifest themselves in decreased range of motion, and those of endurance, such as here, which arise from the cardiac issues.[80]

In essence, both of Yocklin's treating physicians agreed that Yocklin's cardiac condition imposed significant limitations on his ability to endure the standing or seated position for any meaningful length of time. Moreover, this conclusion is well-supported by the medical evidence and, as certainly is the case with Dr. Arabpour, this conclusion is precisely within his medical area of expertise.

Thus, as Yocklin points out, the failure to view Dr. Arabpour's opinion through the lense of his position as a treating source with a specialty in cardiac issues, lies at the center of the ALJ's error in this matter.[81] That opinion was entitled to a presumption of controlling weight, which presumption could only be overcome with good reason. It is not a good reason to discount the opinion on the incorrect basis that it arose from back pain, not from cardiac limitations, nor is it a good reason to discount the specific restrictions as to standing, sitting, and walking because they "have been accommodated by [the RFC] restriction to work that allows for changes in position."[82] Plainly, because these limitations are not based on relatively mild back problems that can be addressed by shifting posture, but on significant cardiac problems that go to endurance, the RFC limitations do not accommodate the limitations expressed by the two treating physicians.

---

[80] *Id.*; *see also*, *id.* at 266-68.

[81] ECF # 21 at 5.

[82] Tr. at 27.

-16-

Therefore, because the ALJ's reasons for discounting the opinions of these two treating sources as to standing, walking, and sitting is not based on good reasons articulated in the opinion, the ALJ's decision is not supported by substantial evidence. Accordingly, as to this specific finding going to the limitation on standing, walking, and sitting, the decision is reversed and remanded for further proceedings.

## Conclusion

Substantial evidence does not support the finding of the Commissioner that Yocklin had no disability. Accordingly, I recommend that the decision of the Commissioner denying Yocklin disability insurance benefits and supplemental security income be reversed as stated above and remanded for further proceedings.

Dated: November 20, 2014                          s/ William H. Baughman, Jr.
                                                  United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[83]

---

[83] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).